**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MARK MULLIGAN,

Plaintiff,

v.

ANTHEM HEALTH PLANS OF KENTUCKY, INC.; TOYOTA MOTOR NORTH AMERICA, INC.; and the TOYOTA MOTOR ENGINEERING & MANUFACTURING POST-RETIREMENT MEDICAL PLAN,

Defendants.

Civil Action File
No. _____________

# COMPLAINT

## INTRODUCTION

1. Mark Mulligan is a retiree from Toyota Motor North America Inc. who receives Ultomiris, a medically necessary infusion medication that Anthem Health Plans of Kentucky, Inc. pre-authorized, on an outpatient basis at Baptist Health Lexington in Lexington, Kentucky. Defendants refused to pay for his outpatient treatment on March 29, 2024 and August 15, 2025, leaving Mr. Mulligan with more than $151,000 in charges and collection notices. Defendants did not contest medical necessity or coverage of the medication. Instead, Anthem's coordination of benefits records wrongly treated Medicare as Mr. Mulligan's primary coverage for these

outpatient services, even though Mr. Mulligan has only Medicare Part A, which covers inpatient care and does not pay for these outpatient services at all. When Mr. Mulligan appealed, Anthem upheld the denial on the ground that his "primary insurance covered the services"—a statement that was inaccurate, because Medicare paid nothing. When Mr. Mulligan sought further review, Anthem refused to consider the merits and instead declared his appeal untimely. Because Defendants' denial of benefits was inconsistent with the Plan, Mr. Mulligan brings this action to recover benefits owed to him by Defendants and all other appropriate relief.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Mark Mulligan is, and was at all times relevant hereto, a resident of Scott County, Kentucky.

3. Defendant Toyota Motor North America, Inc. ("Toyota") is Mr. Mulligan's former employer. Toyota is headquartered in Plano, Collin County, Texas.

4. As a retiree of Toyota, Mr. Mulligan was and is a participant in Defendant Toyota Motor Engineering & Manufacturing Post-Retirement Medical Plan (Plan No. 505) (the "Plan"), through the Pre-65 Retiree Health Benefit and its Blue Access PPO medical coverage option.

5. Toyota is the Plan Sponsor of the Plan. The Plan Administrator is Toyota's Group Vice President, Chief Human Resources Officer. Upon information

and belief, the Plan Administrator's duties of administrating the Plan are and were duties within the course and scope of the Plan Administrator's employment with Toyota.

6. Toyota contracted with Defendant Anthem Health Plans of Kentucky, d/b/a Anthem Blue Cross and Blue Shield ("Anthem"), to serve as the Claims Administrator for the Plan's PPO medical benefits, with Anthem's responsibilities including making benefit decisions, paying claims, coordinating benefits, and processing benefit claims and appeals.

7. While Anthem is a Kentucky corporation, it processed and denied the claims and appeal at issue in Atlanta, Georgia.

8. The Plan is a welfare benefits plan under 29 U.S.C. §§ 1001–1461, the Employee Retirement Income Security Act of 1974 ("ERISA").

9. Toyota, the Plan Administrator, Anthem, and the Plan (collectively "Defendants") are fiduciaries of the Plan as defined by ERISA.

10. This lawsuit is brought to obtain an order requiring Defendants to pay or reimburse expenses incurred during Mr. Mulligan's outpatient treatment at Baptist Health Lexington and to clarify his rights to future benefits under the Plan. The remedies Mr. Mulligan seeks under ERISA and the Plan are for benefits due under the terms of the Plan and to clarify rights to future benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); for statutory penalties pursuant to 29 U.S.C. § 1132(c); an

award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

11. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

12. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 based on ERISA's provisions regarding nationwide service of process and venue and because the breach took place in this District, as Anthem processed the claims and appeal in Atlanta, Georgia. Venue in this Division is proper under LR 3.1 because the denials of Plaintiff's claims and appeal took place in Fulton County.

## FACTUAL ALLEGATIONS

### Allegations regarding the Plan

13. Toyota issued a Summary Plan Description for the Plan, current as of January 1, 2025 (the "SPD").

14. Upon information and belief, the SPD, along with the Plan document and any applicable summary of material modifications, sets forth the terms of the Plan. The SPD states that the detailed description of coverage options is contained in booklets prepared by the applicable third-party benefit provider, which are incorporated into the Plan document and the SPD by reference. SPD at 5. Anthem has identified the applicable booklet as the Toyota Motor North America, Inc PPO 1 Benefit Booklet Effective 01/01/2025 (the "Benefit Booklet").

15. The Plan's PPO medical coverage is self-insured by Toyota and administered by Anthem. SPD at 10, 59.

16. The SPD provides that the Plan Administrator has delegated to Anthem, as Claims Administrator, discretionary authority to interpret and administer the Plan, to determine benefit payments, and to decide appeals of denied claims. SPD at 39, 46.

17. The SPD provides that for network providers, the Plan "pays 90% of the Maximum Allowable Amount for most eligible expenses after you [the participant] meet the deductible," subject to an annual out-of-pocket maximum of $2,100 for retiree-only coverage. SPD at 11.

18. The SPD defines "Outpatient" as a participant who is treated as a patient without being admitted to a Hospital. SPD at 65.

19. The SPD explains that the purpose of coordination of benefits is to ensure that total payments from all plans do not exceed 100% of the allowable charge. SPD at 25. The Primary Plan pays its benefits first, and a Secondary Plan adjusts its payments so that total payments from all plans do not exceed 100% of the allowable charge. *Id.*

20. With respect to Medicare, the SPD provides that the Pre-65 Retiree Health Benefit coordinates benefits with Medicare as required by law, and that "[in]n most cases, for retired team members and Spouses/Domestic Partners who are

receiving Medicare benefits, Medicare will be the Primary Plan and this Plan will be the Secondary Plan with respect to the payment of benefits, meaning that Medicare will provide the first level of coverage and this Plan may pay additional benefits not covered by Medicare." SPD at 26.

21. In denying Mr. Mulligans' claim, Anthem quoted a document entitled "Medical Benefit Booklet Toyota Motor North America, Inc PPO 1 Benefit Booklet Effective 01/01/2025."

22. Mr. Mulligan is not in possession of this document, but Anthem asserted in its denial letter that it contained the following passage in the "Coordination of Benefits (COB)" section:

> When the benefits of this Plan are reduced, each benefit is reduced in proportion. It is then charged against any applicable benefit limit of this Plan. If this Plan is secondary, the combined benefit of this Plan and the other Plan will never exceed what would have been provided by this Plan if primary. No benefits will be provided by this Plan when the amount paid by the other Plan is equal to or greater than the amount this Plan would have paid if Primary.

23. The SPD provides that participants appealing an adverse benefit determination are entitled to a full and fair review, and must file an appeal within 180 calendar days after being notified of the denial. SPD at 48. The Plan requires only a single mandatory level of appeal before a participant may file suit; further levels of review are voluntary. SPD at 48, 53. The SPD further provides that a participant who submits a claim is entitled to receive, upon request and without

charge, reasonable access to and copies of all documents, records, and other information relevant to the claim. SPD at 46, 49.

24. The SPD provides that any notice of an adverse benefit determination, including a denial on appeal, will include, among other things, the specific reasons for the denial, a reference to the specific Plan provisions on which the determination is based, and a description of any additional material or information needed to perfect the claim. SPD at 48, 50.

**Mr. Mulligan's coverage and treatment**

25. Mr. Mulligan is under 65 years old and was at all times relevant hereto enrolled in the Plan's Pre-65 Retiree Health Benefit.

26. At all times relevant hereto, Mr. Mulligan was also enrolled in Medicare Part A (Hospital Insurance) only. Mr. Mulligan was not enrolled in Medicare Part B (Medical Insurance), which is the part of Medicare that covers outpatient services.

27. Medicare Part A covers inpatient hospital services. It does not cover outpatient infusion services such as those at issue here.

28. Mr. Mulligan's physicians prescribed Ultomiris (ravulizumab), 1,100 mg/11 mL vial (HCPCS J1303), an infusion medication, which he receives on an outpatient basis at Baptist Health Lexington.

29. On February 19, 2025, Anthem issued a pre-authorization approval for Mr. Mulligan's Ultomiris treatment.

30. Prior to March 29, 2024, Anthem processed Mr. Mulligan's claims for this outpatient treatment correctly, with the Plan paying as the primary payer.

**The denial of benefits**

31. Mr. Mulligan received outpatient Ultomiris treatment at Baptist Health Lexington on March 29, 2024 (Claim No. 2024151EM8145).

32. In an Explanation of Benefits ("EOB") dated June 13, 2024, Anthem processed the March 29, 2024 claim as though Medicare were the primary payer and failed to pay the claim as the primary payer under the Plan.

33. As a result, Mr. Mulligan was billed $75,332.75 for the March 29, 2024 date of service, and the account was referred to collections, including a collection letter from Credit Bureau Systems, Inc. dated August 7, 2025 and a letter from Baptist Health Lexington dated June 2, 2025.

34. Mr. Mulligan received outpatient Ultomiris treatment at Baptist Health Lexington on August 15, 2025 (Claim No. 2025238BQ7414).

35. In an EOB dated August 26, 2025, Anthem initially processed the August 15, 2025 claim correctly, leaving Mr. Mulligan with a zero-dollar balance.

36. On or about September 4, 2025, Anthem reprocessed the August 15, 2025 claim using the incorrect coordination of benefits information, again treating

Medicare as primary. Mr. Mulligan thereafter received a collection notice dated December 29, 2025 stating that he owed $76,509.37.

37. Anthem's records incorrectly listed Mr. Mulligan as having Medicare Part B coverage for outpatient services.

**Mr. Mulligan's appeals and Defendants' responses**

38. Mr. Mulligan repeatedly sought review of Anthem's handling of his claims. Anthem acknowledged receipt of his requests in letters dated June 16, 2025 (Case No. APP-COMM-4691563), July 23, 2025 (Case No. GRV-COMM-577392), July 31, 2025 (Case No. APP-COMM-4914502), and September 16, 2025 (Case No. GRV-COMM-596960).

39. In a letter dated November 10, 2025 (Case No. APP-COMM-5280247) (the "Denial Letter"), Anthem reported that it had reviewed Mr. Mulligan's first-level appeal, received September 16, 2025, regarding the outpatient hospital services he received at Baptist Health Lexington on August 15, 2025, and had decided to uphold the previous coverage decision.

40. The Denial Letter stated, in relevant part, as follows:

> I've reviewed your first level appeal. I've gone over everything and have decided to keep the previous coverage decision. Here's a detailed explanation.
>
> **Your appeal**

> You filed an appeal for outpatient hospital services rendered on August 15, 2025, provided by Baptist Health Lexington because you do not agree with how the claim processed.
>
> **The decision**
>
> After reviewing the claim it shows your primary insurance covered the services that were rendered. Per my review of your Medical Benefit Booklet Toyota Motor North America Inc PPO 1 Benefit Booklet Effective 01/01/2025, no benefits will be provided by this Plan when the amount paid by the other Plan is equal to or greater than the amount this Plan would have paid if Primary.
>
> Please refer to the section titled "Coordination of Benefits (COB)" of your Medical Benefit Booklet Toyota Motor North America, Inc. PPO 1 Benefit Booklet Effective 01/01/2025, which states:
>
> When the benefits of this Plan are reduced, each benefit is reduced in proportion. It is then charged against any applicable benefit limit of this Plan. If this Plan is secondary, the combined benefit of this Plan and the other Plan will never exceed what would have been provided by this Plan if primary. No benefits will be provided by this Plan when the amount paid by the other Plan is equal to or greater than the amount this Plan would have paid if Primary.
>
> Your case was reviewed by a Grievances and Appeals Analyst.

41. Anthem's stated reason was neither correct nor reasonable. Medicare did not cover or pay for the August 15, 2025 outpatient services, because Mr. Mulligan had no Medicare Part B coverage and Medicare Part A does not cover outpatient services. The amount paid by the "other Plan" was zero.

42. The Denial Letter did not identify what "primary insurance" Anthem believed had covered the services, what amount that insurance had paid, or how that amount compared to what the Plan would have paid as primary. It did not address

Mr. Mulligan's Medicare Part A-only status, and did not address the March 29, 2024 date of service.

43. The Denial Letter was Anthem's decision on the Plan's single mandatory level of appeal and constituted a final adverse benefit determination with respect to the August 15, 2025 claim. SPD at 48, 53.

44. Upon information and belief, Anthem never issued a substantive decision on Mr. Mulligan's other 2025 appeals and grievances, including those addressing the March 29, 2024 date of service.

45. On April 27, 2026, Mr. Mulligan sent written requests under ERISA to both Anthem and the Plan Administrator, through Toyota's General Counsel, requesting all documents relating to his claims for Ultomiris for plan years 2024 forward, including the governing plan documents.

46. Upon information and belief, Defendants did not produce the requested documents within 30 days of the requests.

47. In a letter dated June 4, 2026, Mr. Mulligan wrote to Anthem's Coordination of Benefits, Claims, and Appeals departments, with a copy to Toyota's Human Resources and Benefits Department. Among other things:

(a) Explained that he has only Medicare Part A, which covers inpatient services, and that the Ultomiris treatment was provided on an outpatient basis;

(b) Explained that Anthem's coordination of benefits records wrongly listed him as having Medicare Part B coverage for outpatient services, and that Anthem should be the primary payer for these outpatient claims;

(c) Identified both claims, the EOBs, the collection notices, and Anthem's February 19, 2025 pre-authorization of the treatment;

(d) Noted that he had previously attempted to appeal without receiving a proper response, enclosing the Denial Letter; and

(e) Requested that Anthem correct its coordination of benefits records and reprocess both claims with Anthem as primary payer.

48. In a letter dated June 9, 2026 (Case No. APP-COMM-6835162), Anthem stated that it had received an appeal on May 11, 2026, addressed only the August 15, 2025 date of service, and refused to review the appeal on the ground that it was not filed within 80 calendar days. The Plan's appeal deadline is 180 days, not 80 days. *See* SPD at 48.

49. In a letter dated June 15, 2026 (Case No. APP-COMM-7090175), Anthem acknowledged receipt on June 8, 2026 of Mr. Mulligan's appeal regarding both the March 29, 2024 and August 15, 2025 dates of service, but refused to review it, stating that the appeal was not filed within 180 days.

50. Neither of Anthem's June 2026 letters addressed the coordination of benefits error, the fact that Mr. Mulligan has no Medicare Part B coverage, or the merits of the claims. Neither letter acknowledged Mr. Mulligan's 2025 appeals and grievances, which Anthem had itself acknowledged in writing, or the fact that Anthem had already decided Mr. Mulligan's timely first-level appeal of the August 15, 2025 claim on November 10, 2025.

51. On September 10, 2026, Mr. Mulligan sent a further letter to Anthem identifying the errors in its June 2026 letters, enclosing Anthem's 2025 acknowledgment letters showing that he had timely sought review, and again requesting that Anthem correct the coordination of benefits error and reprocess his claims. Upon information and belief, Anthem has not responded.

52. Mr. Mulligan exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA. With respect to the August 15, 2025 claim, Mr. Mulligan completed the Plan's single mandatory level of appeal, which Anthem decided in the Denial Letter. With respect to the March 29, 2024 claim, Mr. Mulligan timely sought review, as reflected in Anthem's 2025 acknowledgment letters. Alternatively, Mr. Mulligan's administrative remedies are deemed exhausted under 29 C.F.R. § 2560.503-1(l) because Defendants failed to establish or follow claims procedures consistent with ERISA, including by failing to decide his timely appeals, and further pursuit of administrative remedies would be futile.

53. The denial by Defendants/the Plan of benefits solely and directly caused Mr. Mulligan to incur no less than $151,842.12 in charges for his treatment at Baptist Health Lexington, and caused his accounts to be referred to collections.

54. Mr. Mulligan continues to require Ultomiris treatment on an outpatient basis, and Defendants' ongoing misapplication of the Plan's coordination of benefits provisions threatens his future benefits under the Plan.

55. After receiving the denials, litigation was Mr. Mulligan's only option to enforce his right to benefits owing under the Plan.

56. Mr. Mulligan thereafter retained the undersigned to pursue his rights and remedies under ERISA.

57. The remedies Mr. Mulligan seeks herein are for the benefits due and to clarify rights to future benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), statutory penalties under 29 U.S.C. § 1132(c), pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

**FIRST CAUSE OF ACTION**

**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

58. All allegations of this Complaint are incorporated here as though fully set forth herein.

59. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

60. Defendants wrongly denied payment for Mr. Mulligan's outpatient Ultomiris treatment in violation of the terms of the Plan, which promise benefits to retirees for covered, medically necessary services, and which provide that the Plan pays for benefits not covered by Medicare.

61. Defendants' stated basis for the denial—that Mr. Mulligan's "primary insurance covered the services"—is contrary to the terms of the Plan. Under the coordination of benefits provision Anthem relied upon, the Plan's payment is reduced only by the amount actually paid by the other plan. Because Medicare paid nothing, the Plan owed its full benefit.

62. Because Mr. Mulligan has no Medicare Part B coverage, Medicare provides no coverage for his outpatient treatment, and the Plan is obligated to pay benefits for those services as the primary—and only—payer. Defendants' treatment of Medicare as primary for outpatient services Medicare does not cover is contrary to the terms of the Plan and to the purpose of coordination of benefits, which is to

prevent payment of more than 100% of the allowable charge, not to leave a participant with no coverage at all.

63. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and engage in a meaningful dialogue with claimants in the pre-litigation appeal process. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.

64. Defendants' handling of Mr. Mulligan's appeals demonstrates the absence of a meaningful analysis. Among other things, Defendants upheld the denial of the August 15, 2025 claim based on a factually false premise without identifying the "primary insurance" or the amount it supposedly paid; failed to decide the other appeals and grievances Anthem acknowledged in 2025; misstated the Plan's appeal deadline as 80 days; misstated the date Mr. Mulligan's request was received; refused to review the merits on timeliness grounds while ignoring Mr. Mulligan's prior timely appeals; and never addressed the coordination of benefits error that caused the denials.

65. Because Anthem's denials were not the product of a deliberate, principled reasoning process supported by substantial evidence, they cannot be upheld even under a deferential standard of review.

66. Defendants breached their fiduciary duties to Mr. Mulligan when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133

to act solely in Mr. Mulligan's interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of Mr. Mulligan's claims.

67. Because Defendants failed to comply with the requirements of 29 C.F.R. § 2560.503-1, Mr. Mulligan is deemed to have exhausted his administrative remedies, and Defendants are not entitled to deference in this Court's review of the denial.

68. The actions of Defendants and the Plan in denying payment for Mr. Mulligan's treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA. Mr. Mulligan is entitled to recover the benefits due to him under the Plan and to a clarification of his right to future benefits under the Plan, including an order that the Plan pay as primary payer for his outpatient services not covered by Medicare.

**SECOND CAUSE OF ACTION**

**(Claim for Statutory Penalties Under 29 U.S.C. § 1132(c))**

69. All allegations of this Complaint are incorporated here as though fully set forth herein.

70. Under 29 U.S.C. § 1024(b)(4), the Plan Administrator must, upon written request of any participant, furnish a copy of the latest updated summary plan

description and the instruments under which the plan is established or operated. The SPD likewise provides that a copy of the Plan document will be furnished to a participant upon written request. SPD at 37.

71. On April 27, 2026, Mr. Mulligan submitted a written request to the Plan Administrator, through Toyota's General Counsel, the Plan's designated agent for service of legal process, for the documents under which the Plan is operated as they relate to his claims.

72. The Plan Administrator failed or refused to comply with Mr. Mulligan's request within 30 days.

73. Under 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1, the Court may in its discretion hold the Plan Administrator personally liable to Mr. Mulligan in the amount of up to $110 per day from the date of such failure or refusal.

74. In addition, Mr. Mulligan is entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff seeks relief as follows:

1. Judgment in the total amount owed for Mr. Mulligan's treatment at Baptist Health Lexington on March 29, 2024 and August 15, 2025;
2. A declaration clarifying Mr. Mulligan's right to future benefits under the Plan, including that the Plan must pay as primary payer for outpatient services not covered by Medicare Part A;

3. Statutory penalties under 29 U.S.C. § 1132(c) as outlined in Plaintiff's Second Cause of Action;
4. Pre- and post-judgment interest to the date of payment;
5. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and
6. For such further relief as the Court deems just and proper.

DATED this 5th day of November 2026.

*/s/Joseph H. Wieseman*
Joseph H. Wieseman
Georgia Bar No. 558182
**HAWKINS PARNELL & YOUNG** LLP
303 Peachtree Street, Suite 4000
Atlanta, GA 30308-3243
Telephone: (404) 614-7400
Facsimile: (855) 889-4588
jwieseman@hpylaw.com
*Attorney for Plaintiff*

Anna Christiansen*
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
anna.christiansen@cjlaw.com
*Attorney for Plaintiff*
**Pro Hac Vice Application Forthcoming*

## **RULE 7.1.D. CERTIFICATE**

The undersigned counsel certifies that this document has been prepared with Times New Roman 14-point font in accordance with Local Rule 5.1.C.

Respectfully submitted this 5th day of November, 2026.

*/s/Joseph H. Wieseman*
Joseph H. Wieseman
Georgia Bar No. 558182
**HAWKINS PARNELL & YOUNG LLP**
303 Peachtree Street, Suite 4000
Atlanta, GA 30308-3243
Telephone: (404) 614-7400
Facsimile: (855) 889-4588
jwieseman@hpylaw.com
*Attorney for Plaintiff*